JOSEPH K. MURRAY, Trustee, etc., Respondent, *v.* THE GREAT WESTERN INSURANCE COMPANY, Appellant.

*Evidence — when the report of a board of survey of a vessel is not admissible against the insurance company—examination of a witness under a deposition—he must state the facts and cannot refer to reports made by him.*

In this action, brought upon a policy of marine insurance to recover for the total loss of a vessel caused by its striking upon a sunken reef, near the harbor of Nassau, it appeared that after the steamer had been injured, three persons were appointed by the United States consul at Nassau, to make a survey of her condition, which they did, and made a report on October 25, 1878. This was followed by the appointment of another board of surveyors, consisting of the same persons and one other, who made a further report on December 3, 1878. These reports were subscribed but not verified by the persons making them.

*Held,* that it was error to receive these reports in evidence against the defendant's objection and exception.

The persons making the reports were examined on commission. The witnesses did not undertake to repeat or recapitulate the facts mentioned by them in their reports, or to give a minute or particular description of the condition in which they found the steamer and machinery, but, declining to answer interrogatories propounded to elicit statements of the particular injuries alleged to have been discovered by them in the machinery and hull of the steamer, referred generally to the reports as containing the information sought for and the facts required.

*Held,* that it was error to receive in evidence as against the defendant the reports so referred to in the said interrogatories.

That the objection was properly taken at the trial at the time of the reading of the interrogatories and of the offer of the reports, and not by a motion to suppress the depositions.

Appeal from a judgment recovered on a trial had before the court without a jury at the New York Circuit.

*Joseph H. Choate* and *Prescott Hall Butler*, for the appellant.

*John Sherwood*, for the respondent.

Daniels, J.:

The recovery was on a policy of marine insurance issued by the defendant on the 13th of September, 1878, on the steamer Cleopatra, her tackle, apparel and furniture. She encountered an injury by striking upon a sunken reef on the 23d of October, 1878, while passing through what is called Douglas Channel, at the entrance to

Cochran's anchorage, near the harbor of Nassau. It was alleged on behalf of the plaintiff, to whom the insurance had been transferred by the assured, with the consent of the company, that the steamer and her boilers and machinery were injured by the stranding to such an extent as to justify their abandonment to this and the other companies as a total loss under their policies, and notices of the intention to make such an abandonment were served upon the insurance companies. The right to claim such a loss was denied on behalf of the defendant, which insisted that the injuries sustained were not of so grave a description as to entitle the plaintiff to recover in the action for a total loss. Evidence was given on behalf of the plaintiff upon the trial to prove that the injuries to the steamer were so extended as to require a larger expenditure to repair them, after deducting one-third new for old, than one-half the value of the steamer fixed and agreed upon in the policy. This was encountered on behalf of the defendant by further testimony tending to establish the fact that the expense of repairing the steamer and her machinery would have been much less than this amount. But as the evidence was presented to the court the conclusion was reached that the plaintiff's claim for a total loss had been sustained and that he was entitled to recover upon that theory in the action.

At the harbor of Nassau the evidence tended to show that the injuries sustained by the steamer and her machinery could not be repaired, and without repairs it would have been hazardous to have attempted to navigate her to another and distant port where necessary repairs could be provided. And this was considered, as it very well might be, as an important circumstance tending to indicate the existence of a total loss. For that was necessarily to be decided according to the condition in which the steamer and her machinery were found to be and the advantages or facilities for repairing her injuries at or near the place where they had been sustained. After the steamer had been in this manner injured three persons were appointed by the United States consul, at Nassau, to make a survey of her condition, which they did and reported on the 25th of October, 1878. This was followed by the appointment of another board of surveyors consisting of the same persons, and another, who made a further report on the 3d of December, 1878.

These reports were subscribed but not verified by the persons making the surveys, and they agreed in the statements contained in them as to the condition and situation of the steamer and her machinery. And during the trial these reports were received as evidence and seem to have been so acted upon by the court in the disposition of the action. In and of themselves they were not entitled to be received or acted upon as testimony. They were simply *ex parte* statements and representations of the condition in which the persons making them considered the steamer and her machinery to be. The defendant was in no manner a party to the examination or proceeding. (*Griswold* v. *Nat. Ins. Co.*, 3 Cow., 96, 117.) Neither were they required to be made by the policy itself, as surveys for other purposes have been provided for and their effect declared. But they were made under the general custom or practice existing in cases of marine insurance. But that custom or usage has not been so far accepted by courts of justice as to hold in actions of this description that the reports of the surveyors may be received or acted upon as evidence. The rule, so far as it is settled by authority, is adverse to this use being made of the report of surveyors appointed and acting in the manner in which the surveyors acted, whose reports were used upon the trial. (*Abbott* v. *Sebor*, 3 Johns. Cases, 39, 46; *Saltus* v. *Com. Ins. Co.*, 10 Johns., 487; *Hall* v. *Franklin Ins. Co.*, 9 Pick., 466, 477; *Rankin* v. *Am. Ins. Co.*, 1 Hall, 619, 633.)

The authorities relied upon in behalf of the plaintiff do not conflict with this legal principle, for both *Butler* v. *Murray* (30 N. Y., 101) and *Gordon* v. *Massachusetts Insurance Company* (2 Pick., 249, 264) were decided and disposed of upon the propriety of the master of the ship acting upon a survey in determining whether or not a sale of the vessel should be made. For that purpose the master has been required to act in good faith according to the exigencies of the circumstances by which he may be surrounded, and under which he is obliged to act. And where he may have secured the aid and assistance of competent surveyors the report made by them to him is a material circumstance to be considered by him, as to the course which he ought to adopt in the exercise of his authority as master for the sale of the ship. And the same view was taken of his duty in *Prince* v. *Ocean Insurance Company*

(40 Maine, 481) and *Orrok* v. *Commonwealth Insurance Company* (21 Pick., 456). But there is a wide difference between the evidence the master himself may be required to act upon in the case of a pressing emergency, and that which is received in courts of justice to determine legal controversies. In the latter cases the statements of persons who are competent witnesses, made to or under the authority of one of the parties, have not been allowed to be received as evidence against the objection of the other party. This principle is very general and it has led to the exclusion of reports and documents of this description; and it was evidently at first so considered and regarded at the trial of the action. But the plaintiff endeavored to avoid its effect and secure the introduction of the reports in evidence by the testimony of the surveyors taken on commission. In their evidence these witnesses did not undertake to repeat or recapitulate the facts mentioned by them in their reports, or to give anything like a minute or particular description of the condition in which they found the steamer and machinery, but they referred generally to the reports which had been made, and declined to answer interrogatories propounded to elicit statements of the particular injuries alleged to have been discovered by them in the machinery and hull of the steamer. The first of the surveyors, James H. Gamblin, in his answers to the direct interrogatories, stated: "I found her in the condition and having sustained the injuries stated in our letter to Messrs. Darling & Co. of October twenty-fifth, hereto annexed. Said letter is in my handwriting. It was a preliminary examination only." In his answer to the next interrogatory his statement was "that information is contained in our report and I can add nothing to it." This interrogatory asked the witness to "state in what position you found said steamship, and what, if any, injuries, damages or displacements, you then discovered to the hull, tackle, apparel, boilers, engines or machinery." The most that the witness was willing to answer in his responses to the direct interrogatories was that the description of the vessel and her machinery had been correctly set forth in the reports and he could do no better than to refer to them. Upon his cross-examination he did give something of a description of the condition in which he stated he found the steamer and her machinery, but finally made a summary of his evidence by stating that he referred " to our

reports of surveys wherein our reasons were stated explicitly and which are a sufficient answer to all these inquiries. I do not desire to repeat them." The answers of the other surveyors, Thomas W. Finlayson, Charles Smith and Henry C. Lightbourn, were, in their substance and effect, the same. They declined, and failed in their evidence to particularly state the condition in which they found the steamer and her machinery, but referred to the reports, the final one made on the 3d of December, 1878, by all of these witnesses, as the document from which the information sought by the questions could be obtained.

It is probably needless to say that this was an improper course for the witnesses to take in giving their evidence. What they should have done, and what the interrogatories required them to do, was to state the facts they had observed, and which had come to their knowledge, exhibiting the condition of the steamer and her machinery. They could not omit to do that merely for the reason that these two surveys had been made containing statements in detail of the injuries deemed to have been received by the vessel. What the parties were entitled to and the defendant had the right to insist upon was that the witnesses, under the oaths administered to them previous to their answering the interrogatories, should state and repeat all the knowledge they had concerning the state and condition of the steamer and her machinery. And, for their failure to do so, objections were taken upon the trial to the reading of this testimony. The objections were first presented to the depositions as entireties, and then to the answers the witnesses had made in this manner to particular interrogatories. Each of the objections were overruled, and the defendant excepted to the decisions made in that manner. These answers appear to have been regarded, as they very well might be, as including the two reports made of the surveys of the steamer. When they were first received by the court it was not as evidence of their contents, but after that, and when the answers to the interrogatories were read, the reports seem to have been received as evidence in the case. To their use as evidence the objection was taken that they were unverified, incompetent and hearsay. This was overruled, and the defendant excepted. The further and same objections were taken " to the survey referred to in the answer to the twenty-first inter-

rogatory.". The same disposition was made of these objections, and the defendant excepted. This interrogatory inquired of the witness " what, if any, were the damages, injuries, losses or displacements to the hull, boilers, engines, tackle, apparel and furniture of the said steamship discovered upon the said examination or survey.". And the answer of the first witness was, " They were such as were set forth in my reports and in the copies annexed, and I can do no better than to refer to them ;" and it was to these reports that these particular objections seem to have been directed. They were overruled, as already stated, and the defendant excepted. The same objections and rulings were taken to the evidence given by Finlayson and the other surveyors. And upon their evidence these surveys were brought into the case and used in its disposition. The case is somewhat obscure, it is true, as to this fact, but the reports of the surveys were included in it as a part of the plaintiff's evidence, and seem to have been so considered as the result of the disposition of these objections. And that they were received and acted upon as evidence is conceded, as a matter of fact, in the points and argument presented by the learned counsel for the plaintiff. These reports not being evidence of themselves could not be made so by the general answers and references given by the witnesses who made them.

They were still incompetent as proof in the case and did not dispense with the legal necessity of these persons repeating, when they were examined as witnesses, what they found the injuries to the steamer and her machinery to have been. They could very well refer to their reports to revive or refresh their recollection, but after having done so the law required that they should state in their evidence what the facts were which they discovered in the course of their examinations, and the effect that was deemed attributable to them in the value of the vessel and her machinery.

It has been suggested that the remedy of the defendant was not by objecting to these answers and documents as evidence upon the trial, but by a motion to suppress the depositions themselves, under section 910 of the Code of Civil Procedure. But such a motion appears to have been made and denied. And it may very well have been so disposed of, for neither of the causes for which that section has provided that a deposition may be suppressed, seems to

have been presented in support of the motion.  The next section of the Code has declared that the depositions when produced upon the trial, have " the same effect, and no other, as the oral testimony of the witness would have, and an objection to the competency or credibility of the witness, or to the relevancy or substantial competency of a question put to him, or of an answer given by him, may be made as if the witness was then personally examined, and without being noted upon the deposition."  The objections which were taken by the defendant to these portions of the evidence were within this section, for the answers given by the witnesses were not competent as proof of the condition in which this steamer and her machinery were found.  They could not make evidence of that fact by referring to reports they had made at the time when they were called upon to examine the steamer.  And beyond the objections taken to the competency of these answers, the reports themselves were further objectionable as hearsay and incompetent evidence. And the objections taken to their admission as evidence should have been sustained instead of being overruled as they were upon the trial.  The practice which was followed in making the objections conformed to the rule indicated in *Commercial Bank, etc.,* v. *Union Bank* (1 Ker., 203), as well as being sustained by this section of the Code.  These reports, it can be very well seen from the case, must have exercised an important bearing upon its final determination, and the error in receiving them can be no otherwise corrected than by another trial of the action.  The question should also have been allowed to be answered which was put to one of the defendant's witnesses, whether there was anything in his examination of the vessel that enabled him to state whether the extent to which she was out of line was recent or old.  So should the further question have been answered whether he was able to form a judgment as to the age of the hogging alleged to have been caused by the stranding or of the steamer being out of line.  For if the witness by his experience and observation had been able to answer these questions in the affirmative, then further proof might have been elicited from him having a pertinent bearing upon the condition of the steamer succeeding the time when she stranded.  But it is not necessary to consider these or any other exceptions in detail in the case, or the general effect of the evidence as long as the

exceptions taken to the answers which have been considered, and the admission of the surveys as evidence cannot be satisfactorily answered or avoided. They require another trial of the action, in which the witnesses shall be afforded an opportunity of stating the facts themselves, under the solemnity of the oaths administered to them, without referring for their detail or description to the reports made as the result of the surveys.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.