## SAMUEL H. HARTSHORNE *v.* THE UNION MUTUAL INSURANCE COMPANY.

*Insurers presumed to know Customs of place.*

Marine insurers are bound to know the custom of the place where they effect their insurance, and the law presumes they do know such custom, and have made their contracts in reference thereto.

This was an action to recover $9,200 for the loss of one hundred and eighty-four bales of cotton, burned on the boat Alabama, on the Chattahoochee River, in the State of Alabama, in the month of February, 1854. The action was tried before Chief Justice Bosworth, of the Superior Court of the City of New York, where the Plaintiff recovered judgment for the amount of his claim. The Defendants appealed to the General Term of the Supreme Court in the First District, where the judgment below was affirmed. The Defendants now appeal to this Court. The facts are fully stated in the opinion of the Court.

*Alex. S. Johnson* for the Appellants.

*Wm. Tracy* for the Respondent.

Hunt, J.—The Defendants, an insurance company in the city of New York, desired to extend their business to the insurance of cottons shipped upon the Chattahoochee River, from the upper portions of the river to Appalachicola, in the State of Florida. To accomplish this purpose, in the month of October, 1852, they appointed the firm of J. Day & Co. their agents, the said firm then being engaged in the mercantile and insurance business at Appalachicola. The mode of transacting this insurance business at Appalachicola differed from the ordinary mode, for the reason that the arrival of any particular boat at the various places on the river could not be known in advance, and shipments were made by good boats as they offered themselves; and for the reason that the mails were slow and irregular, and cottons shipped to a house at Appalachicola usually reached that city by the same vessel which brought advices of their shipment. Hence had arisen a

custom which in 1852, and for many years before that time, had become an established usage and course of business, by which the insurance business at this place was transacted substantially in this wise: Persons engaged in receiving consignments of cotton at that place obtained from the insurer a certificate of insurance, expressed to cover shipments of cotton from various points on the river, to the holder of such certificate at Appalachicola. The holder kept a book in which he entered, as received, all shipments of the description specified in the certificate, with the value and requisite particulars; and after the end of each month he exhibited such pass-book to the insurer, and had the premium fixed. The fact of shipment was rarely known to the consignee or to the insurer before the termination of the risk. This course of business was well known at Appalachicola, and to the various parties effecting insurance with the Defendants, and to J. Day & Co. To enable their agents to carry on the desired insurance business, the Defendants, in November, 1852, issued to them and in their name an open policy of marine insurance, numbered 784, for $250,000. A certificate for the renewal of this policy, and an additional policy for $250,000, numbered 993, were issued to said J. Day & Co. in November, 1853. At the time of delivering the policy No. 784 to J. Day & Co., the Defendants also delivered to them, to be used in their insurance agency, a large number of certificates, one of which was delivered by Day & Co. to the Plaintiff, and is in the following words:

"Union Mutual Insurance Company of New York.

"F. S. Lathrop, President; John S. Tappan, Vice-President; Ferdinand Stagg, Secretary.

"Certificate No. 1.

"*Appalachicola, Nov.* 15, 1852.

"Entered this date, on policy No. 784, issued by the Union Mutual Insurance Company of the City of New York, *sundry amounts, per endorsements made in book accompanying this certificate by J. Day & Co., on account of sundry parties whose names*

*appear on book,* payable in case of loss to *S. H. Hartshorne, on cotton shipped per good steamboats from points on the Chattahoochee River to Appalachicola, and consigned to S. H. Hartshorne, valued at per endorsements made in book by J. Day & Co.,* on board the ——, —— master, at and from —— to ——. Time of sailing,——. Bill of lading dated ——.

" The said *S. H. Hartshorne,* therefore, *is* insured by the said Union Mutual Insurance Company, lost or not lost, for the said sum of, *per endorsement,* —— dollars as above.

" Binding.                                                J. DAY & Co.

" *Appalachicola,* 15 *Nov.,* 1852.

" Please pay to *S. H. Hartshorne,* or order, such sums or amount as may in case of loss become due on the above insurance of —— dollars, in the same manner as if a separate policy had been issued in his favor.

" J. DAY & Co.

" F. S. Lathrop, Esq., President Union Mutual Insurance Company."

This certificate, so issued to the Plaintiff, was pasted into his pass-book; and at the time of issuing the certificate, Day & Co. made the following entry in the pass-book:

" To cover all cotton shipped by or for any of the following parties, valuation per bale annexed to each name.

| | | | | | | |
|---|---|---|---|---|---|---|
| Roberts & Locke, | from | Eufaula, | valued | at $50, | per bale. | |
| L. F. Stour, | " | " | " | " | " | " |
| J. M. Morrison, | " | " | " | " | " | " |
| D. Morris, | " | Georgetown, | " | " | " | " |
| L. J. Leand, | " | Eufaula, | " | " $45 | " | |
| Harrison & Goodwin, | " | " | | at invoice | valuation. | |
| J. M. Hamilton & Co., | " | " | | " $50 | per bale." | |

On the 15th of November, 1853, J. Day & Co. wrote on the original certificate issued to Hartshorne, a renewal of the pol-

icy from November 15, 1853, to July 1, 1854, and signed the same. At the same time they gave a renewal of the certificate issued to them, to extend to the same period. Further entries were made from time to time, increasing and decreasing the valuation of the cotton.

At the time of appointing J. Day & Co. their agents, and as a part of the means by which they made such appointment, the Defendants wrote to them a long and explicit letter of instructions on the subject of the business to be undertaken, and the manner in which it should be transacted. In this letter, among other things, it was said that " these policies are granted in the form presented, for the purpose of enabling you to take risks for other parties under the same, and the certificates are to be used as evidence for the award, that the certificates described by them are covered by the policy in your hands, and are considered by us in fact as representing a policy issued by the company itself, subject to all the conditions of the same, and in case of loss payable in like manner."

On the 3d day of February, 1854, the boat Alabama, while descending the Chattahoochee River, and having on board cotton to the extent of one hundred and eighty-four bales, valued at $9,200, consigned to the Plaintiff on account of the persons named in his certificate, was destroyed by fire. Proofs of loss were properly made, and served upon the Defendants; and upon their refusal to pay, this action was brought, demanding the issuing of a formal policy, and payment of the amount due.

I have stated a portion only of the facts of the case, as they appear upon the voluminous papers before us. Enough, however, is given to present the two principal questions upon which the Defendants rely.

The first objection urged by the Defendant, on this appeal, relates to the agency of J. Day & Co. It is urged that Day & Co. had no authority from the Defendants to conduct the business of insurance in the manner they did; that risks should only have been taken while they were pending; and that the system adopted by Day & Co. of receiving a statement from the insured of the

risks assumed during the previous month, after the goods had arrived in safety, or after they had been lost, and then paying premiums or demanding compensation, was not within the contemplation of the parties, or the scope of the agent's authority.

This objection is one of fact rather than of law, and in that view is not properly before this Court. We sit to review decisions of law only, while the appeal upon questions of fact is limited to the Courts below. The question whether, upon the facts found by the Court, a contract of insurance did legally exist, is a question of law, which we may properly consider.

I will, however, examine both of the propositions presented.

It is found as a fact by the Court below, that Day & Co. were the agents of the Defendants for the transaction of an insurance business at Appalachicola. It is further found that the system of insurance adopted by them was, and for many years had been, the universally received mode of insurance at that place. Indeed, from the necessities of the case, it would have been scarcely possible to have carried on the business of insurance there in any other manner. It is said by the Defendants' counsel that this circumstance would not justify a departure from the agent's instructions; that if he could not insure in accordance with his instructions, he should have declined to insure at all. Nothing can be more true than the principle thus asserted; and as between the agent and his principal, it would be conclusive. Here, however, the owners or consignees of the cotton, who made their contract with the Defendants through their agent, call upon them to respond, in fulfilment of their part of the contract, and other considerations intervene.

That the business, as conducted, was known to and approved by the Defendants, is quite clear. In the first place, they were bound, as marine insurers, to know the customs of the place, and are assumed in law to know them, and to have made their contracts in reference to them (1 Phillips, p. 43, ed. of 1840).

In the next place, their agents knew the custom, and had practised upon it for years. In a controversy between the Defendants and Day & Co., they might question the effect of this knowl-

edge ; but in a suit with a third party, the knowledge of Day is the knowledge of the company, and binds them absolutely.

I am strongly inclined to the belief, also, that the Defendants, in fact, knew of this mode of insurance, and were content with it while it was profitable. Much of the correspondence before the loss occurred, contains expressions assuming the existence of this practice ; but it is not so explicit in its language as to be beyond doubt. The letter of Day & Co. to the Defendants, of March 6, 1854, in explaining the loss, stated with particularity the mode of insurance adopted. In their answer of March 21, the Defendants' President finds no fault with this practice, and makes no allusion to it. The refusal to pay is placed upon the ground that the prior insurances had absorbed the whole amount of the policy of $250,000, and that its vitality was exhausted. Again, in their letter of April 1, 1854, the detail is repeated by Day & Co. at greater length. In replying to this letter, the President of the Defendants still makes no complaint of that practice, but informs them that " our views remain unchanged, and that we must insist that no part of the shipments by steamers Eagle or Alabama are covered by this office." Surprise is expressed by the company at the amount of insurance upon the cargo of a single vessel, and disapprobation. No complaint, however, is made, and no surprise expressed that the returns were made and the premiums paid in the manner stated. I am of the opinion, from the evidence and the findings, that the practice was understood by the company ; that it was not disapproved by them until the occurrence of losses made it for their interest to repudiate it. This they cannot be permitted to do. Having enjoyed the good things belonging to the adventure, they cannot escape from the evil things necessarily connected with it. For nearly a year and a half they received large monthly premiums, based upon this precise mode of insurance, which they have never offered to return to the Plaintiff or the other parties paying them, but still retain and enjoy. Now that a loss has occurred, they must respond in damages, according to the terms of the same contract.

The certificate issued to the Plaintiff, in November, 1852, was an open policy to cover the cotton shipped to him from the points and the persons named. It was by its terms continuous, and was renewed by the certificate issued in November, 1853. The losses by the Alabama on the 3d of February, 1854, came within its terms. Although not within the precise terms of the Defendants' instructions, I do not perceive that it was in express violation of any instruction ; and I have endeavored to show that if such had been the case, the Defendants cannot now make the objection. I see no reason, therefore, for disturbing the judgment upon the first ground claimed by the Defendants.

The Defendants also claim that they are not liable to the Plaintiff, for the reason that before the inception of the present risk, the insurance opened by the policy to J. Day & Co. was fully taken up, and that there was no space or opportunity for further insurance under the same. The Defendants claim the same result upon the facts, whether the insurance is restricted to the original policy, No. 184, or the policy 993 be treated as an extension of it, or the additional issue of $250,000 be included. In other words, they claim that before the incurring of the present risk, more than $750,000 had been taken upon these policies and their extension. The Plaintiff claims that this amount of insurance should be reduced by the sum of $78,748, for which J. Day & Co. had issued certificates to themselves, under the policy No. 784. These certificates, he claims, are void, inasmuch as J. Day & Co. being the agents for the Defendants, and bound to give to them the benefit of their skill and sagacity in making bargains for insurance, could not, by becoming themselves the assured, place themselves in a position where their private interests were in hostility to their duty to the Defendants. To this effect, in general terms, are N. Y. Central Ins. Co. *v.* National Protection Ins. Co. (4 Kern. 85) ; Bentley *v.* Columbia Ins. Co. (17 N. Y. R., 421) ; and those insurances, to the amount of $78,748, were held to be void by the judge who tried the case.

The Defendants do not claim that at the time of issuing the original certificate to the Plaintiff, the amount of policy 784

was exhausted; and it appears in the evidence that this was the first certificate issued by the Defendants' agents. Neither is it claimed that the whole amount of the policies and the renewals had been taken up when the renewal certificate was issued to the Plaintiff in November, 1853. But returns were subsequently made to the agents, from time to time, of insurances thereafter applied to certificates then issued, which in the aggregate absorbed more than the entire amount of the policies and their renewals. The judge trying the cause decided that if there was an aggregate limit of $750,000 upon the power of J. Day & Co. to assume risks, which could affect the Plaintiff in this action when the certificate of renewal was issued to the Plaintiff, then all definite risks entered subsequently to the renewal of November, 1853, and all entries of risks arising under general certificates issued after that date, should be excluded from the computation of risks under such supposed limit, as between the Plaintiff and the Defendants in this action.

I concur in this statement of the law. The certificate issued to the Plaintiff was in effect an open, continuous policy; and, as it appears from their original letter of instructions, this was the precise effect that the Defendants intended to give it. They say that "these certificates are to be used as evidence that the risks described by them are covered by the policy in your hands, and are considered by us in fact as representing a policy issued by the company itself, subject to all the conditions of the same, and, in case of loss, payable in like manner." They say further, in the same document: "We have not named a limit on the marine policy, knowing the great difficulty you would have in fixing an amount with the parties for whom you would be called upon to insure, but it is our wish," &c. On the margin of the policy to J. Day & Co. was written as follows: "Messrs. J. Day & Co. are authorized to settle and compromise all losses, where, in their discretion, they may consider it their interest to do so, without waiting for instruction from the company. . . . . This policy to be deemed continuous, unless otherwise directed by either party; thirty days' notice being given to the assured, to enable the risks . . . &c., to terminate."

Under this ample authority and intelligent explanation of its effect, J. Day & Co., in November, 1852, issued to the Plaintiff a certificate that he was insured, according to the endorsements made and to be made by Day & Co. in a certain book accompanying the certificate, for cotton shipped to the Plaintiff on account of the persons whose names were mentioned in the book; and it was therein declared that the Plaintiff was insured according to the endorsements, lost or not lost. In November, 1853, this certificate was renewed to the Plaintiff until July 1, 1854, and upon the same terms.

We have here an open policy issued by the Defendants to the Plaintiff; that is, the value of the goods insured is not ascertained and declared in the policy, but the same is to be subsequently ascertained, as occasion shall require. We have also a policy which, according to its terms, is to be deemed continuous, until the first day of July, 1854. In other words, the power of the guaranty given is not to be deemed exhausted by any one or more consignments in favor of the parties named in the pass-book, but the same is to be kept in force as a valid policy for all the consignments by all the parties named, until July 1, 1854. The policy is to be continuous, unbroken, drawn out, and extended over all the subject-matter until July 1, 1854. It covers shipments by the individuals named for every boat that should descend the river, and for any amounts of cotton owned by them. It can be continuous in no other way. It is either exhausted by a single shipment, which is not claimed, or it is continuous and unbroken. I can see no middle ground.

It is said that this may increase the amount of the Defendants' liability greatly beyond the sum intended. That question may arise if a claim is made by some party whose insurance is beyond the amount prescribed in the original policy or its extension. It would be premature to discuss it now, inasmuch as it is conceded that the Plaintiff's claim, at the time the certificate was issued, was within the limit. His claim comes in as of that date, and cuts off those arising under later certificates, should that result be necessary to the enforcement of his claim. It is

not impossible that, by the peculiar form of transacting the business at Appalachicola, the Defendants may have made themselves liable for a larger amount of insurance than they had contemplated. However this may be, it is clear that the certificate to the Plaintiff took effect on the 15th of November, 1853, when the renewal was made. There was no other time when it could take effect. It could not be when the risks were reported, for that was always after the risk had terminated. It could not have been when the goods were put on board the steamboats. This would involve greater embarrassment than the other alternative. It would be impossible for one assured to know whether his claim was good until an account was taken of what had been done by every party to whom a certificate had been issued. Day & Co. would never understand their own position; and, above all, a first applicant might have his insurance, which was good when he took it, rendered void by a shipment by some holder of a subsequent certificate of which he was ignorant, but whose goods were actually put on board before those of the first holder. Such a construction cannot be maintained. The ruling of the judge who tried the cause, and the affirmance thereof by the General Term, are correct, and the judgment appealed from should be affirmed.

GROVER, J.—The questions in this case arise upon the exceptions taken by the Defendants to the conclusions of law drawn by the judge at Special Term from the facts found. Among these conclusions, and the one principally discussed by counsel, is one to the effect that if at the time the certificate agreeing to insure what cotton should be consigned to Plaintiff until July thereafter was renewed to the Plaintiff in the fall of 1853, the power of J. Day & Co. to insure on account of Defendants was limited to the amount of $250,000, $500,000, or $750,000, no insurance made by J. Day & Co. after such renewal, for any other party, could be included in such amount. This certificate agreed to insure the Plaintiff upon all cotton thereafter consigned to him at Appalachicola, coming upon a certain class of steamers down the Chat-

tahoochee River.    It will be seen that the quantity was entirely indefinite.    It might be large, or none at all.    The agreement operated principally upon cotton thereafter to be shipped, and the risk did not attach, and no premium was payable until the cotton was shipped.    This contract was, therefore, for insurance thereafter to be made.    I think if the power was limited to a fixed amount, this Plaintiff could not, under said contract made by J. Day & Co. in November, insure others on cotton shipped consigned to him in February thereafter.    If he could in this way effect such a result, no one could safely rely upon an insurance made by Day & Co. after the issue of one certificate such as was renewed to the Plaintiff; for it would be possible that, during the time covered by the certificate, risks would attach under it to the entire amount.    I think in case Day & Co. were limited in amount, and that contracts beyond such amount were binding upon the Defendants, that all contracts made before the amount was reached to which by their provisions the risks had attached, must be claimed valid, although the amount was exceeded by shipment thereafter made under certificates similar to the Plaintiff's, according to the facts found.    There had been insured by Day & Co. before 1854, the time when the cotton in question was shipped, an amount equal to the policies and extension issued by the Defendants to them; and if they could only make contracts putting at the risk of the Defendants such amount, it would follow that the Plaintiff had no contract of the Defendants insuring the cotton in question, and could not therefore recover in this action.    But the policies contain the following clause : "This policy is to be deemed continuous, unless otherwise directed by either party ; thirty days' notice being given to the assured to enable the risks which had already attached previous to the receipt of notice by J. Day & Co. to terminate."    This clause was inserted for some purpose.    In its absence there can be no doubt as to the power of J. Day & Co. to make contracts of insurance to the amount specified in the policy, nor any doubt as to the right of the Defendants to revoke their power at any time, or of Day & Co. to throw up the agency when they chose.    The clause could not have been designed for

any of these purposes.   A knowledge of the mode of transacting this kind of business at that point, which the Defendants are presumed to have possessed, will aid somewhat in its construction. That was to enter into contracts with parties having cotton shipped to them at times and in quantities unknown for its insurance; the risks terminating in about thirty days from the time of attaching.   They also knew about the amount of this kind of business to be transacted.   They therefore issued to Day & Co. a policy for $250,000, authorizing them to insure this amount for others, and by the above clause made it continuous—that is, authorizing Day & Co. to keep by their contracts this amount at the risk of Defendants; so that, when a risk terminated, its amount should no longer be included in the sum they were authorized to insure.   This construction makes the Plaintiff's contract valid.   It is not claimed that in February, when his cotton was shipped, there was anywhere near the amount of the limit then at risk.   From the case it appears that there was no such amount at risk at any time.   It may be claimed that the letter from Day & Co. to Defendants, advising that the amount was nearly reached, and the addition made thereto by Defendants, militates against this conclusion.   I admit that the argument has some force, as tending to show by the subsequent act of the parties their understanding of the contract.   But the fact that Day & Co. made contracts of insurance in gross beyond the amount specified, and that Defendants received premiums thereon, is an argument equally cogent in its favor.   I think that this is the true conclusion.   This disposes of all the other authorities in the case.

The judgment should therefore be affirmed.

Affirmed.