DUNCAN McCALL et al., Respondents, *v.* THE SUN MUTUAL INSURANCE COMPANY, Appellant.

The statement in a policy of marine insurance of the ultimate and intermediate *termini* of the voyage, does not prohibit stopping at other intermediate ports, which, by the course of navigation, or the usage of trade, are usually entered in making the insured voyage.

In the absence of words excluding it, the course of navigation prescribed by usage may, and indeed must, be pursued.

Defendant issued a policy insuring the bark L. " at and from Miramichi to a port in Cape Breton, and at and from thence to New York, with privilege of carrying coal," etc. The vessel had previously sailed from the port of departure to Big Glace bay, a port in Cape Breton, under a charter to load with coal, containing a provision that if, on arrival, the captain should not consider it safe to remain and load, he was at liberty to proceed elsewhere, in which case the charter was to be considered canceled. Big Glace bay is exposed to the sea, affording no protection from winds and storms, and it is the usual custom for vessels bound to Big Glace bay for coal, during the fall and winter months, to first stop at Sydney, a port in Cape Breton having a good harbor, first reached on a voyage from Miramichi, and when their masters are notified that the vessels can be loaded, to proceed to the port of lading. This custom was established for the safety of vessels. The L. arrived at Sydney November twelfth; the next day her master went to Big Glace bay, and finding no wharf, concluded it an unsafe place to load and went to Cow bay, another port

in Cape Breton having a substantial wharf, and there entered into a charter to load with coal for New York, on December twelfth. As soon as her turn to load arrived, the L. sailed to Cow bay, and while loading was driven upon the rocks and injured. In an action upon the policy, *held*, that the vessel, by stopping at Sydney, did not exhaust the privilege given in the policy, nor was it a deviation; that the vessel was free to choose any customary coaling port on the island, and in going to the selected port to make the voyage in the usual and customary manner; that therefore the privilege of the policy was not exhausted by going into Sydney for safe anchorage according to usual custom; also, that the reservation in the first charter of the right to cancel it, made it uncertain what the actual voyage would be, and it could only be made certain when the master should elect to what port of lading he would go, which election was made at Sydney, in the direct course of a voyage to the port selected, so that there was no deviation.

*It seems*, that if the master had elected, in the first instance, to go to Big Glace bay, and had first gone to that port and then sailed for Cow bay, nis privilege under the policy would have been exhausted, as an election once made determines the right.

The mere fact that an insured vessel exists in specie, does not necessarily prevent the insured from claiming a total loss without abandonment. If after encountering a sea peril it is, for that reason, justifiably sold by the master, the insured may claim a total loss, accounting to the insurer for the proceeds of the sale as salvage received for his benefit.

Where the evidence in a case will warrant the jury in finding for the plaintiff on the whole issue, and the court is called upon by the defendant to decide it as a question of law, without requesting the submission of any question of fact to the jury, the finding of the facts by the court instead of by the jury, is not a ground of exception.

*McCall* v. *Sun Mutual Insurance Company* (7 J. & S., 330) reversed.

(Argued April 13, 1876; decided September 19, 1876.)

Appeal from order of the General Term of the Supreme Court of the city of New York, reversing a judgment in favor of plaintiff entered upon a verdict. (Reported below, 7 J. & S., 331.)

This action was upon a policy of marine insurance. The terms of the policy and the facts appear sufficiently in the opinion.

*Albert Mathews* for the appellant. The putting into Sidney of the vessel was not such a deviation from the voyage

as avoided the policy. (*Pelly* v. *Ex. Ins. Co.*, 1 Burr, 341, 351; Smith's Mer. Law [1st Am. ed.], 363; *Reade* v. *Comm. Ins. Co.*, 3 J. R., 358; *Stevens* v. *Comm. M. Ins. Co.*, 26 N. Y., 403; *Noble* v. *Kennoway*, 1 Dougl., 510; *Wadsworth* v. *Pac. Ins. Co.*, 4 Wend., 37; *Col. Ins. Co.* v. *Cattell*, 12 Wheat., 387; *Child* v. *Sun Mut. Ins. Co.*, 3 Sandf., 440; Phil. on Mar. Ins., §§ 119, 133, 138, 1003; *Cormack* v. *Gladstone*, 11 East, 347; *Uhde* v. *Walters*, 3 Campb., 16; *Wallace* v. *Dewar*, 1 id., 503; *Ongier* v. *Jennings*, id., 505; *DePeyster* v. *Sun M. Ins. Co.*, 19 N. Y., 276; *Bond* v. *Nutt*, Cowp., 601; *Salvador* v. *Hopkins*, 3 Burr., 1714; *Gracie* v. *Mar. Ins. Co.*, 8 Cranch, 75; *Kingston* v. *Knibbs*, 1 Campb., 508, note; *Rodocanachi* v. *Elliott*, L. R., 8 C. P., 669; L. R., 9 C. P. Exch., 518; *Maxwell* v. *Robinson*, 1 J. R., 333.) Neither was the delay there a deviation from the voyage insured. (Phil. on Mar. Ins., §§ 1017, 1023; 1 Dougl., 510; 12 Wheat., 38; *Samuel* v. *Royal Ex. Ass. Co.*, 8 B. & C., 119; *Bouillon* v. *Lapton*, 15 C. B. [N. S.], 143; *Ellery* v. *N. E. Ins. Co.*, 8 Pick., 14; *Lapham* v. *Atlas Ins. Co.*, 24 id., 1; Park on Ins. [6th ed.], 68; *Talcot* v. *Mar. Ins. Co.*, 2 J. R., 130–137; 3 Sandf., 48; 3 Burr., 1707; Smith's Mer. Law, 363; *Patrick* v. *Ludlow*, 3 J. Cas., 10; *Lee* v. *Gray*, 7 Mass., 352; *Perkins* v. *Aug. Ins. Co.*, 10 Gray, 316; *Ship Henry Erobank*, 1 Sumn., 424; *Post* v. *Phœnix Ins. Co.*, 10 J. R., 83; *Delany* v. *Stoddart*, 1 T. R., 22; *Graham* v. *Comm. Ins. Co.*, 11 J. R., 357; *Hobart* v. *Norton*, 8 Pick, 159; *De Longuemere* v. *N. Y. F. Ins. Co.*, 10 J. R., 124; *Vos* v. *Robinson*, 9 id., 196; *Lawrence* v. *Ocean Ins. Co.*, 11 id., 241; *Freeman Ins. Co.* v. *Lawrence*, 14 id., 55; *Wheeler* v. *Mar. Ins. Co.*, 38 Supr. Ct. R., 250; *Snow* v. *Col. Ins. Co.*, 48 N. Y., 624.) Plaintiffs are entitled to recover for an actual total loss. (*Farnsworth* v. *Hyde*, 18 C. B. [N. S.], 834; *Bullard* v. *R. W. Ins. Co.*, 1 Curtis, 153; *Crosby* v. *Mut. Ins. Co.*, 5 Bosw. 377; *Wallenstein* v. *Col. Ins. Co.*, 44 N. Y., 217; *G. W. Ins. Co.* v. *Fogerty*, 19 Wall., 645; *Coit* v. *Smith*, 3 J. Cas., 16; *Roux* v. *Salvador*, 3 Bing. [N. C.], 266; *Rosetto* v. *Gurney*, 11 C. B., 187; *Fontaine* v. *Phœnix Ins.*

*Co.,* 11 J. R., 293; *Robertson* v. *Caruthers,* 2 Stark, 571; *Poole* v. *Pro. Ins. Co.,* 14 Conn., 54; *Brig Sarah Ann,* 2 Sumn., 215; *Peele* v. *Mer. Ins. Co.,* 3 Mason, 40; *Idle* v. *Royal Ex. Ass. Co.,* 8 Taunt., 755; *Fuller* v. *Kennebeck Ins. Co.,* 31 Me., 327; *Charleston Ins. Co.* v. *Cowen,* 2 Gill, 410; *Am. Ins. Co.* v. *Ogden,* 15 Wend., 532; Marshall on Ins., 527; 2 Arnould on Ins., 10, 1092; *Butler* v. *Murray,* 30 N. Y., 100; *Am. Ins. Co.* v. *Center,* 4 Wend., 52; *Prince* v. *Ocean Ins. Co.,* 40 Me., 488; 2 Phil. on Mar. Ins., §§ 1497, 1577, 1597; 2 Pars. on Mar. Ins., 85; *Fitz* v. *The Amelie,* 2 Clif., 442, 445; *The Amelie,* 6 Wall., 26, 29; *Savage* v. *Corn Ex. Ins. Co.,* 36 N. Y., 657; *Ruckman* v. *Mer. Ins. Co.,* 5 Duer, 363; *Gordon* v. *F. and M. Ins. Co.,* 2 Pick., 261; *Reid* v. *Bontham,* 3 B. & B., 147; *Patapsco* v. *Southgate,* 5 Pet., 620; *N. E. Ins. Co.* v. *Sarah Ann,* 13 id., 400; *Post* v. *Jones,* 19 How. [U. S.], 157; *Brondrett* v. *Hentrigg,* 1 Holt., 149; *Tilton* v. *Ham. Ins. Co.,* 1 Bosw., 367; *White* v. *Repub. Ins. Co.,* 57 Me., 93; May on Ins., 491, 492; Tudor on Mer. Law [2d ed.], 158; *Allen* v. *Lagrue,* 8 B. & C., 561; *Young* v. *Pac. M. Ins. Co.,* 34 Supr. C. R., 331; *Robertson* v. *Clark,* 1 Bing., 445; *Parry* v. *Aberdeen,* 9 B. & C., 411; *Rhinelander* v. *Ins. Co. of Penn.,* 4 Cranch, 45; *Fleming* v. *Smith,* 1 H. L. Cas., 526; *Mullett* v. *Shedden,* 13 East, 304.) A sufficient notice of abandonment was given to enable plaintiffs to recover for a total loss. (2 Pars. on Mar. Ins., 296, 174; *Heebner* v. *Eagle Ins. Co.,* 10 Gray, 139; *King* v. *Walker,* 3 Exch., 213; *McIntyre* v. *Bowne,* 1 J. R., 229; Arn. on Mar. Ins., 1162; 2 Phil. on Mar. Ins., § 1682; *Cassidy* v. *La. Ins. Co.,* 9 Martin [6 N. S., 223], 421; *Maryland* v. *Phœnix Ins. Co.,* 5 G. & J., 238; *Ocean Ins. Co.* v. *Francis,* 2 Wend., 71; *McLellan* v. *Me. Ins. Co.,* 12 Mass., 252; *Houstman* v. *Thornton,* 1 Holt [N. P.], 242; *Thwing* v. *Wash. Ins. Co.,* 10 Gray, 451; *Silloway* v. *Manuf. Ins. Co.,* 12 id., 43.) In any event the verdict must be sustained as a rightful recovery for a partial loss. (2 Phil. on Mar. Ins., 1497; *Renaud* v. *Peck,* 2 Hilt., 137; *Campbell* v. *Woodworth,* 20 N. Y., 499; *Dixon* v. *Buck,* 42 Barb., 74; *Crouse* v. *Fitch,*

6 Abb. [N. S.], 187; *Gill* v. *McNamee* 42 N. Y., 46; *Hagar* v. *N. E. Mar. Ins. Co.*, 59 Me,, 463; *Smith* v. *Manuf. Ins. Co.*, 7 Metc., 453; *Suydam* v. *Mar. Ins. Co.*, 2 J. R., 144; *Mellish* v. *Andrews*, 15 East, 15; *Graves* v. *Wash Mar. Ins. Co.*, 12 Al., 395.) Defendant is estopped by its acts and declarations when the insurance was effected from claiming that the memorandum printed on the margin of the policy formed a part of it, or that the policy never attached. (*Braisted* v. *F. L. and T. Co.*, 4 Seld., 305; *Barlow* v. *Scott*, 24 N. Y., 42; *Hoffman* v. *Ætna Ins. Co.*, 32 id., 413; *Johnson* v. *Hathorne*, 2 Keyes, 484; *Johnson* v. *Jones*, 4 Barb., 373; *May* v. *Buckeye Ins. Co.*, 25 Wis., 306; *Keith* v. *Globe Ins. Co.*, 52 Ill., 827; *Pratt* v. *Mut. Ins. Co.*, 9 Bosw., 100; *Comm. Ins. Co.* v. *Sparkraable*, 52 Ill., 517; *Eveland* v. *Wheeler*, 37 N. Y., 249; Bliss on F. Ins., §§ 29–82, 291–293; *Chester* v. *Bk. of Kingston*, 16 N. Y., 343; *Frost* v. *Sar. Mut. Ins. Co.*, 5 Den., 154; *Plumb* v. *Catt. Co. Ins. Co.*, 18 N. Y., 394; *Rowley* v. *Empire Ins. Co.*, 36 id., 550; *Hathaway* v. *Payne*, 34 id., 109; *Couch* v. *City F. Ins. Co.*, 37 Conn., 249; *Howitz* v. *Eq. Ins. Co.*, 40 Mo., 557; *Franklin* v. *At. Ins. Co.*, 42 id., 461; *Coombs* v. *Han. Ins. Co.*, 43 id., 157; *Hayward* v. *Nat. Ins. Co.*, 52 id., 188; *Ins. Co.* v. *Mahone*, 21 Wal., 155; *Woodberry* v. *C. O. Ins. Co.*, 31 Conn., 526; *Schuyler* v. *Russ*, 2 Cai. R., 202; *Bidwell* v. *N. W. Ins. Co.*, 24 N. Y., 304; *Peoria Ins. Co.* v. *Hall*, 12 Mich., 214; *Bevin* v. *Conn. Mut. Ins. Co.*, 23 Conn., 264; *Rathbone* v. *City F. Ins. Co.*, 31 id., 209; *Hutchins* v. *Smith*, 46 Barb., 240; *Block* v. *Col. Ins. Co.*, 42 N. Y., 401.)

*Joseph H. Choate* for the respondent. The policy was rendered void by the deviation in the voyage. (*Hearne* v. *N. E. Mut. M. Ins. Co.*, 20 Wal., 488, 494; *Lawrence* v. *Ocean Ins. Co.*, 11 J. R., 241; *Fireman's Ins. Co.* v. *Lawrence*, 14 id., 55; 3 Kent's Com., * 312; Smith's Mer. Law [3d Am. ed.], 459; 1 Phil. on Ins. [5th ed.], § 983; 2 Pars. on Mar. Ins., 2; 1 Arn. on Ins, * 354; *Child* v. *Sun Mut. Ins. Co.*, 3 Sandf., 26; *Stevens* v. *Comm. Ins. Co.*, 26 N. Y.,

397; *Vos* v. *Robinson*, 9 J. R., 191; *Brown* v. *Tayleur*, 4 Ad. & El., 241.) The pretended usage of navigation sought to be set up by plaintiffs was immaterial. (*Wadsworth* v. *Pac. Ins. Co.*, 4 Wend., 37; *Child* v. *Sun Mut. Ins. Co.*, 3 Sandf., 440; *Cormack* v. *Gladstone*, 11 East, 347; *De Peyster* v. *Sun Mut. Ins. Co.*, 19 N. Y., 276; Phil. on Mar. Ins., §§ 119, 133, 138; *Barnes* v. *Perrine*, 12 N. Y., 23; *Winchell* v. *Hicks*, 13 id., 563; *O'Neill* v. *Janes*, 43 id., 93; *Stone* v. *Hahn*, 47 id., 566; *Frecking* v. *Rolland*, 53 id., 424.) No total loss, actual or constructive, of the Lindo was proved by plaintiffs. (2 Pars. on Ins., 68–74, 85, note 3, 87, 152; 2 Arn. on Ins., *1001, 1082; *Roux* v. *Salvador*, 3 Bing. [N. C.], 266; *Ruckman* v. *Mer. L. Ins. Co.*, 5 Duer, 342; *Sewall* v. *U. S. Ins. Co.*, 11 Pick., 90; *Patrick* v. *Com. Ins. Co.*, 11 J. R., 9; *Peale* v. *Suf. Ins. Co.*, 7 Pick., 254; *Peale* v. *Merch. Ins. Co.*, 3 Mason, 42; *Goss* v. *Withers*, 2 Burr, 697; *Anderson* v. *Royal Ex. Ass Co.*, 7 East, 38; *Knight* v. *Faith*, 152 B., 649; *Gardner* v. *Salvador*, 1 M. & R., 117; 2 Phil. on Ins., §§ 1490, 1535, 1536; *McConochie* v. *Sun Mut. Ins. Co.*, 26 N. Y., 477; *Suydam* v. *Mar. Ins. Co.*, 1 J. R., 181; *McIntyre* v. *Bowen*, id., 229.) The warranty as to the captain who should command the vessel not having been fulfilled the policy never attached. (2 Pars. on Ins., 85, note; 1 id., 42, 337; 1 Phil. on Ins., § 10; 2 id., § 2155; *Lewis* v. *Thatcher*, 15 Mass., 431.)

Andrews, J. The policy was upon the bark Lindo, "at and from Miramichi to a port in Cape Breton, and at and from thence to New York, with privilege of carrying coal exceeding her tonnage." The insurance was effected on the 26th of November, 1864, after the vessel had sailed from the port of departure, having cleared for Big Glace bay, a port in Cape Breton Island, under a charter to load with coal at that port, which, however, contained a provision that "if, on the arrival at Big Glace bay, the captain does not consider it safe to remain and load there, he is to be at liberty to proceed elsewhere, and this charter is to be considered canceled."

The Lindo arrived at North Sydney on the evening of the twenty-sixth of November, where she anchored, and remained until the twelfth of December, when she sailed to Cow bay, and while loading with coal at that place on the twentieth of the same month, was driven upon the rocks, and met with the disaster which has given rise to this action.

Sydney is a port in Cape Breton Island, lying east of Big Glace bay and Cow bay, having a safe harbor, and distant twelve miles from Big Glace bay, and twenty miles from Cow bay, and is first reached on a voyage from Miramichi to either port. Big Glace bay and Cow bay are coaling ports where large quantities of coal are shipped, although, geographically considered, they are open roadsteads, exposed to the sea, affording no protection to vessels from winds and storms. Coal was not to be had at Sydney when the insurance in question was effected.

It was clearly established, on the trial, by the testimony of a large number of witnesses, competent to speak upon the subject, that it was the usual custom for vessels bound to either Big Glace bay or Cow bay, for coal, during the fall and winter months, to first stop at Sydney. The masters would then communicate overland with the agent of the mines, and ascertain when their vessels could be loaded, and when notified would proceed to the port of lading, and receive their cargo. This custom was established for the safety of vessels, and to avoid exposing them to the danger they would encounter from lying in an open roadstead on a dangerous coast, at that season of the year, while detained awaiting their time to load. The master of the Lindo, on the day after his arrival at Sydney, went to Big Glace bay, and finding that there was no wharf at that place, and that vessels could only be loaded from scows, or lighters, while lying at considerable distance from the shore, concluded that it was an unsafe place to load, and immediately went to Cow bay, where there was a substantial wharf, and much better facilities for loading, and entered into a charter with the agent of the mines, at that

place, to load with coal for New York. The vessel left Sydney for Cow bay as soon as her time to load arrived.

The first point urged by the learned counsel for the defendant in opposition to the recovery in this case is, that the vessel having stopped at Sydney, a port in Cape Breton, exhausted the privilege given in the policy, and when she went to Cow bay, another port in the same island, where she was wrecked, she was not covered by the policy. The contention is, that the words in the policy " to a port in Cape Breton " limit the vessel to the use of one port in the island, and by necessary implication prohibit the use of two ports, and it is insisted that assuming the actual voyage undertaken was from Miramichi to Cow bay, and thence to New York, the insured voyage was to one port in Cape Breton only, and that sailing to Cow bay after stopping at Sydney was a deviation which discharged the insurers. The custom to stop at Sydney on a voyage to Cow bay cannot, it is said, authorize stopping at both ports under this policy, for the reason that if permitted to operate it would contravene the express contract of the parties.

We are of opinion that this argument is based upon too narrow an interpretation of the policy. In policies of marine insurance the ultimate and intermediate *termini* of the voyage are generally stated. But this is never construed to prohibit stopping at other intermediate ports, which by the course of navigation, or the usage of trade, are usually entered, in making the insured voyage. In the absence of words excluding it, the course of navigation prescribed by usage may, and indeed must, be pursued. This is an implied condition which attaches to every contract of marine insurance, and if a port is entered belonging to the voyage according to the established usage, there is no deviation, although no mention is made of it in the policy. It is for the interest of all parties that the usages of navigation should be observed. They are founded upon experience, and the consent of navigators and others best able to judge what the interests of all parties require. Contracts of insurance are construed in the light of estab-

lished usage, which, unless excluded by express words, is deemed to be a part of the contract. (1 Arn. on Ins., 333 ; 2 Parsons, on Ins., 8, and cases cited; 1 Phillips, on Ins., 997.)

If the policy in this case had specified a voyage from Miramichi to Cow bay and thence to New York, it cannot be doubted upon the authorities that stopping at Sydney, would not have been a deviation. The stopping at that port was a part of the customary course of the voyage to Cow bay, and stopping there in conformity with the usage would not have vitiated the policy. The words " to a port in Cape Breton " in the policy, gave to the insured the right to select any port. in the island for the purposes of the voyage, and the clause allowing the vessel to carry coal exceeding her tonnage, taken in connection with the trade carried on with the island, indicated to the underwriter, that the vessel was bound there to load with coal. The words used in describing the intermediate *terminus adquem* of the voyage were inserted for the benefit of the insured, and to enlarge and not to restrict his rights under the policy. They indicate no purpose of limiting the vessel to, or excluding her from, using any particular port. The right to select any port was the right intended to be secured to the insured by the indefinite words of the policy. The vessel was free to choose any customary loading port on the island for obtaining her cargo, and in going to the selected port, to make the voyage in the usual and customary manner. The master, therefore, if he elected under the policy to go to Cow bay for his cargo, was authorized to stop at Sydney awaiting his time to load. This was the practice of the trade and was necessary for the safety of the vessel. It was not using two ports of lading. The use of the first port was incidental to the accomplishment of the voyage to the selected port. " It is absurd " said Lord Mansfield, in *Pelly* v. *Royal Exchange Assurance Society* ( 1 Burr., 348), " to suppose that when the end is insured the usual means of attaining it are to be excluded." Insurers are presumed to be acquainted with the situation of ports and harbors, and the course of navigation, and the practice of

the trade they insure. (1 Doug., 510; 10 Jo., 120; 4 Wend., 34; 36 N. Y., 172.) The words "to a port in Cape Breton," used in the policy in question, construed in view of the object of the voyage, which it is fair to presume was known to the insurer, indicated a coaling port in that island, and the privilege of the policy was not exhausted by going into Sydney for safe anchorage, according to the usual custom. The case of *Hearne* v. *The New England Marine Insurance Company* (20 Wall., 489) is not in conflict with these views. The insurance in that case was "at and from Liverpool to a port in Cuba, and at and thence to port of anchorage in Europe." It was held, that the policy did not cover an independent voyage from the port in Cuba, where the vessel discharged her outward cargo, to another port in the same island where she went to reload, and that this deviation could not be justified by proof of usage, as it would contradict the contract.

Another point made by the counsel for the defendant is, that the Lindo cleared and sailed for Big Glace bay, under charter to load there for New York; that this was the actual voyage undertaken, and constituted the insured voyage, as soon as the policy was issued, and that the voyage to Cow bay was a deviation. But the reservation of the right to cancel the charter, if the master of the vessel, on arrival at Big Glace bay, should he deem it unsafe to remain and load there, made it uncertain what the actual voyage would be. It could only be made certain when the master should finally elect to what port of lading he would go. He made this election on his arrival at Sydney, a port of anchorage common to a voyage either to Big Glace bay or Cow bay, and while in the direct course of a voyage to either place. If he had elected in the first instance to go to Big Glace bay, or had first gone to that port, and then sailed for Cow bay, a different question would be presented. An election once made would determine the right forever (11 Jo., 241; 14 id., 55), and an entry into one coaling port, not compelled thereto by stress of weather, or other necessity, although he

did not load there, would exhaust his privilege under the policy. It is reasonable to assume that it was because the destination of the Lindo at Cape Breton was undetermined, that she was insured "to a port" in the island. Her clearing for Big Glace bay was only *prima facie* evidence of her destination. (1 Phillips on Ins., § 994.) It was her probable destination, but whether it would be her actual destination or not, depended on a contingency which was contemplated, and provided for in the charter. The insurer was not prejudiced by the election to go to Cow bay. The right of election was given by the policy; the vessel was at all times in the track of a voyage to the selected port. The election was exercised in conformity with the original charter. The condition that it should be made "on arrival at Big Glace bay," was satisfied when the master, on going there from Sydney, determined that he would not load at that port. It was not necessary that he should take the vessel there before making his election. Nor did he go to Sydney to choose a port in any general or unrestricted sense; he went there as a port of safety, on a voyage to Big Glace bay, or Cow bay, as he should then determine.

The plaintiff claimed a total loss, and the recovery was had upon that theory; and it is claimed that there could be no recovery for a total loss as there was no abandonment. No abandonment is necessary when there is an actual total loss of the insured subject. (*Roux* v. *Salvador*, 3 Bing. [N. C.], 288.) The physical destruction of the thing insured leaves nothing to abandon. But the mere fact that an insured vessel exists in specie, does not necessarily prevent the insured from claiming a total loss without abandonment.

If, after encountering a sea peril from which it sustained injury, it is for that reason justifiably sold by the master, the loss then as between the insured and insurer becomes a total one. The title is by such a sale irrevocably gone from the owner, and cannot, by abandonment, be transferred to the insurer. The insured may, under such circumstances, claim a total loss, accounting to the insurer for the proceeds of the

sale, as salvage received for his benefit. (*Idle* v. *Royal Exchange Ins. Co.*, 8 Taunt., 755; *Cambridge* v. *Atherton*, 1 R. & Mood., 60; id., 2 B. & C., 691; *Roux* v. *Salvador, supra*; *Dyson* v. *Rowcroft*, 3 Bos. & Pul., 474; *Gordon* v. *Mass. Fire and Marine Ins. Co.*, 2 Pick., 249; *The American Ins. Co.* v. *Center*, 4 Wend., 53; 2 Parsons' Insurance, 86; Arnould on Insurance, 850; 2 Phillips on Insurance, § 1497.)

The sale, when justifiably made, is not the cause of the loss, but the sea peril, which made the sale necessary.

The Lindo, while lying at her wharf at Cow bay, taking in her cargo, was struck by a violent gale, and torn from her fastenings and driven stern foremost upon the rocks, a quarter of a mile away, under a perpendicular cliff eighty feet high, where she was bilged and filled with water; her mainmast and fore and mizzen-topmast were carried away, and the whole ship was badly strained and logged. She lay thumping upon the rocks and could only be approached by water; her boat was gone, and the crew remained twenty-four hours upon the wreck before they could be taken off. The situation of the bark was in the highest degree perilous. There was no probability that she could be got off the rocks during the winter, and it was probable that before the spring she would go to pieces; the master had a survey of the vessel made by competent surveyors, who examined her and certified that she was a complete wreck, and advised a sale; he thereupon sold her at public auction, after due notice, in the presence of a large number of people. There is no ground to question the *bona fides* of the sale; in making it the master did what he believed to be for the interest of the owners. He did not then know that the vessel was insured. The purchasers succeeded in getting her off the next season, and they repaired her and then sold her for less than the cost of repairs. The shattered condition of the bark, away from her home port, the impossibility of getting her off the rocks during the winter, the probability of her early and entire destruction from the violence of the winds and sea, on an exposed and dangerous coast, and the fact that

the expense of repairs would exceed her value when repaired, constituted, within the cases, an urgent necessity which justified the master in making a sale, and an abandonment was, therefore, unnecessary. (*The Amelie*, 6 Wall., 30; *Butler* v. *Murray*, 30 N. Y., 88; *Robertson* v. *Clark*, 1 Bing., 445; *Robertson* v. *Carother*, 2 Stark, 57; 2 Arnould on Ins., 1091; 2 Parsons on Ins., 86.)

The warranty in the policy, that the Lindo was commanded by a captain holding a certificate from the American Shipmasters' Association, was not complied with; but the facts stated in the complaint and proved on the trial, made a case for the reformation of the contract, by striking out this warranty. The defendant's counsel, at the conclusion of the evidence, made a motion for a nonsuit, and also that the court direct a verdict for the defendant. The court was not requested to submit any question of fact to the jury; and, as the evidence would have warranted the jury in finding for the plaintiff on the whole issue, and the court was called upon by the defendant to decide the case on a question of law, the finding of the facts by the court instead of by the jury is not a ground of exception. (*Marine Bank* v. *Clements*, 31 N. Y., 43; *Mallory* v. *Tioga Co. Railroad*, 3 Keyes, 356.)

Upon the whole case we are of opinion that the judgment of the General Term should be reversed, and the judgment on the verdict affirmed, with costs.

All concur.

Judgment accordingly.