GUSTAVUS G. WRIGHT AND ANTONIO MARTINS LAGÉ, Respondents, v. JOHN S. WILLIAMS, Appellant.

*Policy of marine insurance — construction of — what is a sufficient averment of a total loss.*

The plaintiffs alleged in the complaint herein that they had advanced and laid out moneys for necessary repairs and supplies furnished to the bark *Flora,* "upon the credit of the said bark and her said cargo severally in proportion, and accordingly as it should be determined upon adjustment in the usual course ;" that, thereafter, a policy of insurance was procured for their benefit "on advances on vessel and cargo, free of general and particular average, and without reclamation." The defendant demurred to the complaint.

*Held,* that the policy did not require that the advances should have been made upon vessel and cargo *jointly* to be covered by it, but that it covered advances made upon the vessel and cargo separately and independently.

The complaint alleged that the vessel was, while proceeding on her voyage, "by the perils of the sea, so greatly and seriously damaged and disabled, that she was obliged, for the safety of her crew and cargo, to put into Bahia, in the empire of Brazil, and that after having arrived at said Bahia, the said bark was found to be irreparable, unfit and unable to proceed on her said voyage, and on or about the 6th day of December, 1867, was duly condemned and sold."

*Held,* that this was a sufficient averment of a total loss.

Appeal from an order of the Special Term, overruling a demurrer to the complaint.

The complaint alleged : That in or about the month of May, 1867, the bark *Flora,* whilst on a voyage from Rio de Janeiro to Baltimore, with a cargo of coffee, was so greatly and seriously damaged and disabled by the perils of the sea that she was obliged to put back into the said port of Rio de Janeiro for the purpose of refitting and repairing, and to enable her to perform her said voyage.

"That the said bark, having been so damaged and disabled, returned to and reached the said port of Rio de Janeiro on or about the 7th day of May, 1867 ; and that thereafter, upon the application of the said master thereof, who was without funds or means to meet and pay for the necessary repairs and supplies and expenses of said vessel, the plaintiffs, as partners, doing business

at said Rio de Janeiro, under the firm name or style of Wright & Co., at said Rio de Janeiro, at various dates between the 7th day of May, 1867, and the 24th day of June, 1867, advanced, paid, laid out and expended for said necessary repairs, supplies and expenses, and upon the credit of the said bark, and her said cargo severally in proportion, and accordingly as it should be determined upon adjustment in the usual course; that the said vessel and cargo were respectively chargeable therewith the sum of $19,514.38, over and above all credits and repayments.

"That after the said advances had been made by the plaintiffs, as aforesaid, and the said bark had been therewith and thereby repaired, refitted and supplied as aforesaid, she, on or about the 28th day of June, 1867, again resumed and set sail with her said same cargo, on her said voyage from Rio de Janeiro to the port of Baltimore aforesaid."

"That thereafter the plaintiffs, by John S. Wright, their agent in that behalf, on the 23d day of July, 1867, at the city of New York, caused a policy of insurance to be taken out in their behalf, which was under written by the defendant, and was "on advances on vessel and cargo, free of general and particular average, and without reclamation."

"That afterwards, and whilst the said vessel was proceeding on her said voyage, she was again, by the perils of the sea, so greatly and seriously damaged and disabled, that she was obliged, for the safety of her crew and cargo, to put into Bahia, in the Empire of Brazil; and that after having arrived at said Bahia, the said bark was found to be irreparable, unfit and unable to proceed on her said voyage, and on or about the 6th day of December, 1867, was duly condemned and sold, and never did arrive at the said port of Baltimore; and that the plaintiffs thereby lost and were deprived of their lien and interest upon and in the said vessel, and their said advances to the extent to which they were chargeable to said vessel, as hereinafter shown; that the cargo of the said bark *Flora* was removed from the said bark *Flora*, and re-shipped on board of a schooner called the *Lundi*, to be carried to the said port of Baltimore; and that the said schooner *Lundi*, with the said cargo on board, afterwards arrived in safety at the said port of Baltimore. And the plaintiffs further show that the whole

amount realized from the sale of said bark at Bahia as aforesaid, over and above the expenses of her surveys, condemnation and sale and other necessary expenses, was the sum of about $3,400, which was received by the master of said bark; and no part thereof was ever applied in payment of the plaintiffs' said advances; and that no part of said advances have ever, in any way, been paid or collected."

*Treadwell Cleveland*, for the appellant.

*William H. Scott*, for the respondents.

BARRETT, J.:

The action is upon a policy of marine insurance. The demurrer is upon the sole ground that the complaint does not state facts sufficient to constitute a cause of action. The insurance, in the language of the policy, was "*on advances on vessel and cargo, free of general and particular average, and without reclamation.*"

The first question is as to the true construction of these words. The defendant contends that they refer to advances on both vessel and cargo unitedly, as an integral subject; while the plaintiffs insist that they should be treated severally and independently.

The importance of this question consists in the fact that the cargo was transferred and arrived in safety; and consequently, if the defendant's interpretation be correct, he is entirely free from liability.

We have given the subject full consideration and are of opinion that the defendant's reading of the clause, though supported by an able and ingenious argument, is altogether too narrow and contrary to just and well settled rules of interpretation.

In the first place the expression, "on advances on vessel and cargo" is, in itself, in its present connection, somewhat indeterminate. It does not necessarily import advances upon vessel and cargo *jointly.* Still less when we consider the rules of law applicable to each.

Then the object in view must be considered.

The plaintiffs had made no advances on vessel and cargo jointly, and it is unreasonable to suppose that they applied, paid for and

accepted a policy which could never, under any circumstances, avail them. Their liens were really several and distinct. The parties necessarily contracted with reference to that fact, for it must be inferred that it was so stated in the application, and that the underwriters acted advisedly. The intention to insure such separate liens in an effectual manner necessarily follows.

As a contract of indemnity to the assured, the policy is to be liberally construed. (Duer on Insurance, 161.) And where the language of the promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was *understood* by the promisee. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y., 405.)

"It is also a familiar rule of law," said PORTER, J., in this case, "that if it be left in doubt, in view of the general tenor of the instrument, and the relations of the contracting parties, whether given words were used in *an enlarged or a restricted sense*, other things being equal, that construction should be adopted which is most beneficial to the promisee." (See also, as to exceptions, *Yeaton* v. *Fry*, 5 Cranch, 341; *Blackett* v. *Royal Ex. Ass. Co.*, 2 Crompt. & Jervis, 244; *Palmer* v. *Warren Ins. Co.*, 1 Story, 360.)

In *Wallerstein* v. *The Columbian Ins. Co.* (44 N. Y., 204), the insurance was simply on "merchandise." The latter consisted of wool and coffee. The court held citing *Biays* v. *Chesapeake Ins. Co.* (7 Cranch, 418), and *Wadsworth* v. *Pacific Ins. Co.* (4 Wend., 40) that "the insurer of the wool and the coffee is liable for a total loss of either the wool or the coffee. Each is deemed the subject of a distinct insurance under the clauses in question."

The cases all agree that the mere literal form of words must give way to the real purpose, to the extent even of turning the copulative into the disjunctive, and *vice versa*. (*Rees* v. *Abbott*, Cowp., 832; *Davis* v. *Boardman*, 12 Mass., 80; Parsons on Marine Insurance, 82, 83.)

The valuation of the advance at a lump sum does not control.

The precise amount chargeable to each was not known when the policy was applied for, and had to be settled by a subsequent adjustment. Then the entire clause bears evidence of haste and carelessness of expression. It reads, "*the said goods and merchan-*

*dise hereby insured* are valued at $19,000." Even this latter amount was not intended to be precise, for we find that the advances were actually $19,514.38. It is apparent that the sum was inserted in a loose, general way, and without intending to characterize the insurance as joint. In every view of the matter, we think there was a distinct insurance upon the advances on the vessel and the cargo severally.

The remaining contention is, that even if the insurance be thus viewed, still the underwriter is not liable, for the reason that there was not a total loss of the vessel.

This question has been elaborately argued, as though the cause were before us after a trial upon the merits. We are, however, at present confined strictly to the pleadings, and must simply determine whether *any* cause of action is set out.

It is undoubtedly the general rule, in insurance free of particular average, that the underwriter is only liable for a total loss. This is not necessarily a total loss in specie, but of value. There may either be an actual or a constructive total loss. In the former case the thing insured is physically destroyed — substantially so at least. In the latter, the material form may exist, but the value to the owner is gone. The rule, then, is that if the expenses of repair will exceed half the value of the ship when repaired, there is a constructive total loss, and she may be abandoned. Due and formal notice of the latter act then becomes essential. (Arnold on Ins., 844; 2 Parsons on Ins. [ed., 1868], 125, 126; 2 Phillips' [4th ed.], 274, § 1535; Marshall on Ins. [5th Eng. ed.], 440.)

The argument here is, that as there was no absolute extinction of the vessel, the complaint fails to show a cause of action, because no constructive total loss or abandonment is averred. This latter question may become important hereafter. It need not now be considered, for the reason that the averments in the complaint are broad enough to cover an actual total loss.

In *McCall* v. *The Sun Mut. Ins. Co.* (66 N. Y., 505), it was held that the mere fact that an insured vessel exists in specie does not necessarily prevent the insured from claiming a total loss without abandonment. If, after encountering a sea peril, it is, for that reason, *justifiably sold by the master*, the insured may claim

a total loss, accounting to the insurer for the proceeds of the sale as salvage received for his benefit.

"The shattered condition of the bark," said ANDREWS, J., "away from her home port, the impossibility of getting her off the rocks during the winter, the probability of her early and entire destruction from the violence of the winds and sea on an exposed and dangerous coast, and the fact that the expense of repairs would exceed her value when repaired, constituted, within the cases, *an urgent necessity which justified the master in making a sale*, and an abandonment was, therefore, unnecessary."

Now, let us look at the present complaint in the light of these rules. It is charged that, after being "greatly damaged and disabled by the perils of the sea, the bark was found to be *irreparable*, unfit and unable to proceed upon her voyage," and that she was thereupon " duly condemned and sold." This is an averment of an actual total loss within the case cited. She was unfit and unable to proceed, and *entirely past repairing.* Not that the expenses of the repairs would exceed one-half or even the entire value, but *that she could not be repaired at all.* That is to say, she could not be used as she was, and she could not be put in condition to be used. She was thus lying on the master's hands, utterly destroyed and valueless *as a vessel*, just as much so as though she "lay thumping on the rocks in a violent gale, bilged and filled with water, and badly strained and logged" (as in the *McCall Case*).

The facts thus set up constituted an urgent necessity which, to repeat the language of the *McCall Case*, "justified the master in making a sale, and an abandonment was therefore unnecessary."

Nor is this sequence from the specific averment affected by the fact, also set out, that the bark realized so considerable a sum as $3,400. We must assume, in view of the previous averments, that this was realized not for the bark *as such* — for it is in substance charged that she was valueless *as a vessel* — but for the material, chains, anchors, sails, rigging and hull.

The defendant may be entitled to credit for the product of the sale. There may ultimately be questions of fact as to whether there was an actual or constructive total loss, with interesting questions of law, should the latter prove to be the truth of the case.

Suffice it at present to say that an actual total loss is averred, and that a cause of action for some amount is fairly deducible from the complaint as thus framed.

The order overruling the demurrer must therefore be affirmed, with costs.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and BARRETT, J.

Order affirmed, with costs.